UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STACEY LYNN NICHOLAS,

        Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

        Defendant.
_____

**DECISION AND ORDER**

1:18-CV-00203(JJM)

    This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [12, 16].[2] The parties have consented to my jurisdiction [19]. Having reviewed the parties' submissions [12, 16, 18], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

    Plaintiff ceased working as a Licensed Practical Nurse ("LPN") in September 2013. Administrative transcript [6], p. 54. In October 2013 she applied for DIB with an onset date of October 21, 2013 due to multiple sclerosis ("MS"), bipolar disorder, anxiety, and

---

[1]  On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, and is automatically substituted as the named defendant. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2]  Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

depression. Id., pp. 158, 160. At that time, she was 32 years old. Id., p. 38. After plaintiff's initial application for benefits was denied, an administrative hearing was conducted before Administrative Law Judge Bryce Baird on January 29, 2016. Id., pp. 51-74, 89-91. Shortly before the hearing, plaintiff amended her onset date to September 20, 2013, and because plaintiff returned to full-time employment as an LPN on October 15, 2014, she requested a closed period of disability from September 20, 2013 through October 15, 2014. Id., pp. 239-41.[3] Since plaintiff was working at that time, she did not appear for the hearing. Id., pp. 53-55. Plaintiff's attorney appeared on her behalf. Id. A vocational expert testified that typically being off-task no more than 5% of the workday is tolerated by an employer. Id., p. 65.

In his September 28, 2016 decision, ALJ Baird determined that plaintiff's severe impairments were MS and bipolar disorder. Id., p. 36. Based on the record before him, ALJ Baird concluded that plaintiff had the residual functional capacity ("RFC") to "lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday", and is "limited to performing simple, routine tasks and . . . frequently interact with the public", as well as "to work that requires doing the same tasks every day with little variation in location, hours or tasks". Id., p. 38. Based on that RFC, ALJ Baird determined that plaintiff was unable to perform her past relevant work as an LPN, but that there remained significant jobs in the national economy that she was capable of performing. Id., p. 44. Therefore, he concluded that plaintiff was not disabled during the closed period at issue. Id., p. 45. The Appeals Council denied plaintiff's request for review (id., pp. 1-5), and thereafter she commenced this action.

---

[3] The Commissioner notes that without amending her onset date, plaintiff would not have met the 12-month requirement standard for a severe impairment or disability. Commissioner's Brief [16-1], pp. 8-9.

The medical evidence in the record from the relevant time period demonstrates that plaintiff was diagnosed with MS in February 2011. Id., p. 666. On September 11, 2013 plaintiff reported leg pain starting in the upper back to Amy Burke, M.D. Id., p. 525. It was noted that she had no history of back pain. Id. On September 27, 2013, plaintiff reported to Suburban Psychiatric Associates that after starting her medication regime for bipolar disorder and anxiety that she had "decreased energy", yet also stated that her "energy level is improving". Id., p. 494.[4] In similarly contradictory terms, plaintiff reported that her sleep was "good", but also that she had "decreased sleep". Id.

On October 2, 2013 plaintiff was seen by Peterkin Lee-Kwen, M.D. of Southtowns Neurology. At that time, plaintiff complained of fatigue and malaise, blurred vision, chest pain, back pain, impaired balance, numbness and tremor. Id., p. 475. Her physical examination at that point showed normal gait, muscle bulk and movements. Id., p. 476. Dr. Lee-Kwen noted that plaintiff's MS had not relapsed, and that she had been taken off of Tecfidera due to side effects. Id., p. 474. Dr. Lee-Kwen also discussed with plaintiff the "risk vs. benefit regarding not being on immunomodulator vs. no treatment". Id. Her anxiety was also much better on Latuda and Pristiq. Id. Plaintiff stated that "[t]here are no symptoms of relapse right now, but she has this 'feeling' that something is coming soon" and that "her anxiety is better seeing a psychiatrist and she is on new meds. This is helping". Id., p. 475.

On October 21, 2013, Dr. Lee-Kwen described plaintiff's MS as follows: "She had uncontrolled disease because she had adverse effects of several medications. It was difficult to distinguish between this versus anxiety or true difficulty". Id., p. 480. He also

---

[4] At her August 2, 2013 visit to Suburban Psychiatric Associates, plaintiff reported "feel[ing] more energized, more rested, more relaxed". [6], p. 492.

stated that plaintiff "did not have any treatment with the immunomodulators in more than 6 months. She was on Tecfidera and she did see the ophthalmologist . . . . She had leg weakness and an internal vibration and some instances of blurry vision. There was a lot of fatigue". Id. By October 29, 2013, plaintiff reported to Suburban Psychiatric "feeling lazy and sluggish" and having "daytime drowsiness". Id., p. 497. She also reported "MS symptom exacerbation – currently out of work". Id.

On December 31, 2013, Gregory Fabiano, Ph.D. performed a consultative psychiatric evaluation. Plaintiff described her sleep as "not well" and reported "dysphoric moods, loss of usual interest, irritability, fatigue, loss of energy, diminished sense of self esteem, diminished sense of pleasure, and social withdrawal". Id., pp. 578-79. She further reported "significant problems with anxiety", but had only occasional difficulty with concentration and memory because of her MS. Id., p. 579. Dr. Fabiano found that plaintiff did not have any limitations in maintaining a regular schedule and only mild limitations in her ability to maintain attention and concentration and appropriately deal with stress. Id., p. 581. He concluded that plaintiff's psychiatric problems were not "significant enough to interfere with [her] ability to function on a daily basis". Id.

On January 16, 2014, John Schwab, D.O. performed a consultative internal medicine examination. Id., pp. 583-86. No complaints of fatigue were noted, and Dr. Schwab concluded that while plaintiff had MS (remitting and relapsing), she had no restrictions. Id., p. 586.

On January 27, 2014, Dr. Mangold,[5] a state agency psychological consultant, determined that plaintiff had moderate limitations in her activities of daily living, social

---

[5]    Dr. Mangold's first name does not appear in the record.

functioning, and concentration, persistence, and pace and no repeated episodes of decompensation over an extended period. Id., p. 80.

On March 27, 2014 an initial psychiatric evaluation was performed by Lakeshore Behavior Health. Id., p. 623. It was noted that plaintiff had been diagnosed with bipolar disorder approximately three to four years earlier. Id. At that time, she was "negative" for sleep disturbance, but did "occasionally have some muscle weakness and fatigue from her MS recurrence". Id. She further reported that Latuda and Pristiq were "helpful and her mood was stable". Id.

In April 2014, plaintiff reported to Southtowns Neurology that she had fatigue and back pain. Id., p. 611. Specifically, it was noted that she was experiencing a change in her sleep pattern and having trouble falling asleep because of her anxiety. Id. However, plaintiff's physical examination continued to reveal normal muscle strength and gait. Id., p. 612. An MRI of plaintiff's brain taken at that time showed no substantial changes from a November 2012 scan. Id., p. 610.[6]

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as

---

[6]     As a lay person, it is difficult to fully interpret the MRI report, but plaintiff does not contest the Commissioner's characterization that it showed "no substantial worsening from a November 2012 scan". Commissioner's Brief [16-1], p. 4.

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Did ALJ Baird Properly Evaluate the Functional Effects of Plaintiff's MS?**

Plaintiff argues that ALJ Baird "failed to properly evaluate [her] subjective statements, specifically those regarding her fatigue from relapsing [MS]". Plaintiff's Memorandum of Law [12-1], p. 7.[7] The Commissioner responds that ALJ Baird "properly considered the medical opinion and other evidence and no doctor opined that Plaintiff had greater limitations from her [MS], then . . . his RFC finding . . . . As substantial evidence supports the ALJ's RFC it should be upheld." Commissioner's Brief [16-1], p. 13.

In limiting plaintiff to light work, ALJ Baird explained that the record revealed "rather mild to moderate clinical abnormalities and diagnostic abnormalities" that were "inconsistent with [plaintiff's] allegations of disabling symptoms and functional limitations". [6], p. 39. He explained that plaintiff's "neurological examinations were essentially normal. An MRI scan of the brain from April 2014 showed no worsening changes from a prior MRI scan from November 2012. The medical record does not document ongoing significant back pain, neck pain, fatigue, headaches, difficulty swallowing, dizziness, and weakness and sleep problems

---

[7]     While plaintiff treats her fatigue as a symptom of her MS, the record demonstrates that plaintiff's complaints of fatigue were equally (if not more) connected to her bipolar disorder and/or anxiety.

that her representative has alleged. In addition, the medical record contains only one report from treating ophthalmologists which document essentially normal corrected vision and recommendations simply for monitoring for [MS] complications". Id., p. 42.

ALJ Baird also pointed to the "wide range of activities of daily living" performed by plaintiff, including caring for her young son, as being inconsistent with her allegations of disabling symptoms. Id., p. 43. Further, with respect to the medical opinion evidence, he gave "some weight" to Dr. Schwab's consultative opinion, because contrary to his assessment that plaintiff had no functional limitations, the treatment records "document some, but rather mild, abnormalities for [MS], with some noted negative side effects to medication, to support a light range of physical capability". Id. He also gave "great weight" to Dr. Fabiano's opinion. Id.

"The ALJ must consider Plaintiff's statements about the effects of her symptoms, such as fatigue, on her activities of daily living and ability to work. 20 C.F.R. §§ 404.1529(a), 416. 929(a). However, the ALJ must also consider whether the medical evidence shows that Plaintiff's medical impairments could reasonably be expected to produce Plaintiff's stated symptoms. Id. The ALJ must then determine the intensity and persistence of Plaintiff's symptoms and its effect on her capacity for work activities in light of all the available evidence, including objective medical evidence, opinion evidence, and other evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c)." Michno v. Astrue, 2009 WL 3491302, *3 (W.D.N.Y. 2009).

As plaintiff argues, "the ALJ cannot reject statements about the intensity and persistence of pain and other symptoms '*solely* because the available objective medical evidence does not substantiate [the claimant's] statements'" Plaintiff's Memorandum of Law [12-1], p. 7 (*quoting* SSR 96-7p) (emphasis added). "However, the ALJ may evaluate the credibility of a claimant together with the medical findings and other evidence in determining the true extent of

the disability alleged by the claimant." Johnson v. Astrue, 493 F. Supp. 2d 652, 659 (W.D.N.Y. 2007). "The ALJ should consider other evidence including prior work record, claimant's statements about her symptoms, symptoms reported by treating physicians and others, and personal observations. Relevant factors to consider include daily activities, duration, frequency and intensity of symptoms, aggravating factors, side effects from medication, treatments used and any other relevant factors." Michno, 2009 WL 3491302 at *3.

Applying this standard, I conclude that ALJ Baird properly evaluated plaintiff's subjective complaints concerning her fatigue and other MS related symptoms, and that his RFC was supported by substantial evidence. ALJ Baird fully considered the entire record and addressed the objective medical evidence, opinion evidence, and plaintiff's activities of daily living, in evaluating her subjective symptoms and formulating the RFC. While plaintiff did complain of fatigue to her treatment providers, there is nothing in the record to indicate that her fatigue was significant enough to interfere with her ability to perform light work on a sustained basis. *See* Commissioner's Brief [16-1], p. 15 ("no doctor indicated that plaintiff was specifically limited by fatigue or any other condition, more so than the ALJ found as part of his RFC finding").

As the fact-finder, ALJ Baird was entitled to weigh the credibility of plaintiff's statements about her symptoms. His findings were sufficiently grounded in the record evidence and articulated in his opinion. *See* Martin v. Barnhart, 2008 WL 365727, *6 (N.D.N.Y. 2008) ("the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, present an explicit summary of his evaluation, and render an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence"). Therefore, I conclude that remand is not warranted.

**C. Did ALJ Baird Err by Failing to Consider Plaintiff's Anxiety a Severe Impairment?**

Plaintiff argues that despite the record containing multiple references to her suffering from anxiety, ALJ Baird failed to consider whether her anxiety was a severe or non-severe impairment and by doing so, also failed to consider Listing 12.06 for anxiety related disorders. Plaintiff's Memorandum of Law [12-1], pp. 9-10. In response, the Commissioner argues that the medical evidence demonstrated that her anxiety did not impact her ability to perform basic work activities, and that any error by ALJ Baird at step two is harmless because plaintiff's anxiety was considered by ALJ Baird in formulating plaintiff's RFC. Commissioner's brief [16-1], pp. 8-11. He also argues that plaintiff points to no evidence that her anxiety met Listing 12.04, which was considered by ALJ Baird ([6], pp. 36-37) and contained the same "B" and "C" criteria as Listing 12.06. Id., pp. 11-13.

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a 'severe impairment' that 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" Serrano v. Colvin, 2018 WL 991792, *3 (W.D.N.Y. 2018) (quoting 20 C.F.R. § 416.920(a)(4)(ii), (c)). "Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting." Cuenca v. Commissioner of Social Security, 2016 WL 2865726, *5 (N.D.N.Y.), adopted, 2016 WL 2858858 (N.D.N.Y. 2016) (citing 20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6)). "The mere presence of an impairment, or the fact that the claimant has been diagnosed or treated for an impairment, is insufficient to render a condition

'severe.' Rather, severity is determined by the functional limitations that an impairment imposes." Hayes v. Berryhill, 2018 WL 3069116, *3 (W.D.N.Y. 2018).

It is the plaintiff's "burden to show at step two that she has a severe impairment." Guerra v. Commissioner of Social Security, 2018 WL 3751292, *2 (W.D.N.Y. 2018). Hence, "[a] step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe." Id. Additionally, "when an administrative law judge identifies some severe impairments at Step 2, and then proceeds through the sequential evaluation on the basis of the combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." Id., *3.

While plaintiff was diagnosed with anxiety, plaintiff points to no evidence that it significantly impacted her ability to perform work activities. In any event, as the Commissioner argues, ALJ Baird gave "great weight" to the opinion of Dr. Fabiano, who "considered the effects of Plaintiff's anxiety, along with her other impairments, on her functional limitations", and concluded that she had only mild limitations in the ability to maintain attention and concentration and to deal appropriately with stress. Commissioner's Brief [16-1], p. 10. Therefore, any error was harmless. See Reices-Colon v. Astrue, 523 Fed. App'x 796, 798 (2d Cir. 2013) (Summary Order) ("[a]t step two, the ALJ identified other 'severe impairments,' including . . . depression, and post traumatic stress disorder, and therefore proceeded with the subsequent steps . . . . And, in those subsequent steps, the ALJ specifically considered her anxiety and panic attacks. . . . Because these conditions were considered during the subsequent steps, any error was harmless").

Nor did ALJ Baird err by failing to consider whether plaintiff's anxiety met Listing 12.06. "To qualify as a listed impairment under Listing 12.06, the claimant's impairment must satisfy the criteria in both paragraphs A and B, or the criteria in both paragraphs A and C, of that listing." Avila v. Astrue, 933 F. Supp. 2d 640, 651 (S.D.N.Y. 2013).

As argued by the Commissioner, while ALJ Baird did not consider Listing 12.06, he did consider Listing 12.04, which has overlapping requirements.[8] "To qualify as a listed impairment under Listing 12.04, the claimant's impairment must satisfy the criteria in both paragraphs A and B, or the criteria in paragraph C, of that listing." Id. In concluding that Listing 12.04 was not met, ALJ Baird found that plaintiff failed to meet the criteria of both paragraphs B and C. [6], pp. 36-37. Plaintiff does not dispute that the paragraph B and C criteria of Listing 12.04 are the same as Listing 12.06. Commissioner's Brief [16-1], p. 12. Since plaintiff did not satisfy those paragraphs, he could not meet either Listing. See, e.g., Grega v. Berryhill, 2019 WL 2610793, *6 (W.D.N.Y. 2019) ("any error the ALJ committed by not explicitly discussing listings 12.07 or 12.08 is harmless. Those listings have the exact same paragraph B requirements as listings 12.04 and 12.06. . . . Thus, because the ALJ clearly found that Grega's mental impairments did not meet the requirements of paragraph B for listings 12.04 and 12.06, he implicitly determined that Grega's impairments did not meet the criteria for listings 12.07 or 12.08"). Therefore, I conclude that any error in failing to consider Listing 12.06 was harmless.

---

[8] Plaintiff does not dispute that the Commissioner properly used the listings that were in effect at the time of the decision. Commissioner's Brief [16-1], p. 11 n. 3.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [16] is granted, and plaintiff's motion [12] is denied.

**SO ORDERED**.

Dated: September 5, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
